# United States Court of Appeals

*for the*

# Federal Circuit

POLO GEAR INTELLECTUAL PROPERTIES, INC., POLOGEAR LLC,

*Appellants,*

— v. —

PRL USA HOLDINGS, INC.,

*Appellee.*

APPEALS FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, TRADEMARK TRIAL AND APPEAL BOARD, OPPOSITION
NOS. 91207805, 91221338, AND 91224180

## BRIEF FOR APPELLEE

DANIEL I. SCHLOSS
GREENBERG TRAURIG, LLP
200 Park Avenue, 38th Floor
New York, New York 10166
(212) 801-2256
schlossd@gtlaw.com

*Attorneys for Appellee*

Dated: January 17, 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Polo Gear Intellectual Properties, Inc. et al          **v.**          PRL USA Holdings, Inc.

Case No. _____ 16-2478 _____

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

Daniel I. Schloss

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| PRL USA Holdings, Inc. | | Ralph Lauren Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Greenberg Traurig, LLP, Melissa B. Berger, Seth E, Kertzer, Daniel J. Navarro, Sarah Y. Lippman

August 24, 2016
_____
Date

/s/ Daniel I. Schloss
_____
Signature of counsel

Please Note: All questions must be answered

Daniel I. Schloss
_____
Printed name of counsel

cc:    Counsel for Appellants by ECF

Reset Fields

# TABLE OF CONTENTS

Page(s)

**I.     STATEMENT OF RELATED CASES** ........................................................1

**II.    STATEMENT OF THE ISSUES** ............................................................1

**III.   PRELIMINARY STATEMENT** ..............................................................1

**IV.    STATEMENT OF FACTS/STATEMENT OF THE CASE** ....................4

**V.     SUMMARY OF ARGUMENT** ..............................................................5

**VI.    ARGUMENT** ..........................................................................................6

    A.   Standard Of Review ......................................................................6

    B.   The Board's Denial Of Pologear's 60(b) Motions Is Supported
        By Substantial Evidence And Involved No Abuse Of Discretion ..........7

        1.   The Board Considered All Relevant Circumstances
            Under Rule 60(b)(1) ...............................................................7

        2.   The Board's Judgments Were Not Default Judgments
            Within the Meaning of FRCP 55 ............................................8

        3.   The Board Considered PoloGear's *Pro Se* Status and
            Properly Determined that its Inaction Was Reasonably
            Within its Control ..................................................................10

        4.   The Board's Finding on the Second *Pioneer* Factor is
            Supported by Substantial Evidence and Involved No
            Abuse of Discretion ..............................................................14

        5.   The Board's Findings on the Third *Pioneer* Factor are
            Supported by Substantial Evidence and Involved No
            Abuse of Discretion ..............................................................18

        6.   The Board Appropriately Gave Greater Weight in this
            Case to the Third Pioneer Factor, the Reason for the
            Delay .....................................................................................21

        7.   FRCP 60(b)(6) Can Yield No Different Result than
            FRCP 60(b)(1) on the Same Facts ........................................23

**VII.   CONCLUSION** ....................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re The Boston Beer Co. Ltd. P'ship*,
198 F.3d 1370, 53 U.S.P.Q.2D (BNA) 1056 (Fed. Cir. 1999)............................6

*Chambers v. NASCO*, Inc.,
501 U.S. 32 (1991)........................................................................................8

*Community Dental Services v. Tani*,
282 F.3d 1164 (9th Cir. 2002) ....................................................................25

*CTRL Systems v. Ultraphonics North America Inc.*,
52 U.S.P.Q.2d 1300 (T.T.A.B. 1999) ..........................................................18

*Dickinson v. Zurko*,
527 U.S. 150, 50 U.S.P.Q.2D (BNA) 1930, 144 L. Ed. 2d 143, 119
S. Ct. 1816 (1999)........................................................................................6

*Djeredjian v Kashi Co.*,
21 U.S.P.Q.2d 1613 (1991)..........................................................................17

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993) ............................................................................11

*FirstHealth of the Carolinas, Inc., v. CareFirst of Md., Inc.*,
479 F. 3d 825 (Fed. Cir. 2007) ................................................................6, 22

*Fred Hayman Beverly Hills Inc. v. Jaques Bernier, Inc.*,
21 U.S.P.Q.2d 1556 (1991)..........................................................................17

*Herring v. Merit Sys. Prot. Bd.*
78 F.3d 1011 (Fed. Cir. 2015) ....................................................................26

*Higgs v. Atty. Gen. of the U.S.*,
655 F.3d 333 (3d Cir. 2011) ...................................................................11, 13

*Huston v. Ladner*,
973 F. 2d 1564 (Fed. Cir. 1992) ..................................................................6

*Jackson v. Washington Monthly Co.*,
569 F.2d 119 (D.C. Cir. 1977)................................................................25, 26

*Link v. Wabash R, Co.*,
370 U.S. 626 (1962)....................................................................................18

WHP 556597599v6

*Luster Products Inc. v. Van Zandt*,
104 USPQ2d 1877 (TTAB 2012) ...................................................21

*Malibu Media, LLC v. Doe*,
2013 WL 1080603 (S.D. Ind., March 13, 2013) .............................11

*Marriott Corp. v. Pappy's Enterprises, Inc.*,
192 USPQ 735 (T.T.A.B. 1976) .........................................................18

*Matsushita Elec. Indus. Co. v. United States*,
750 F.2d 927 (Fed. Cir. 1984) .............................................................7

*Mattel, Inc. v. Henson*,
88 Fed. Appx. 401 (Fed. Cir. 2004)..................................................14

*Old Nutfield Brewing Co. v. Hudson Valley Brewing Co.*,
65 USPQ2d 1701 (TTAB 2002) .......................................................21

*On-Line Careline, Inc. v. America Online, Inc.*,
229 F.3d 1080, 56 U.S.P.Q.2D (BNA) 1471 (Fed. Cir. 2000)............6

*Oquendo v. U.S.*,
541 Fed. Appx. 954 (11th Cir. 2013)................................................24

*Pioneer Investment Servs. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)...............................................................7, 14, 23

*Primbs v. United States*,
4 Cl. Ct. 366 (Cl. Crt. 1984) ......................................................24, 25

*Pro-Cuts v. Schilz-Price Enters.*,
1993 TTAB LEXIS 15, 27 U.S.P.Q.2D (BNA) 1224 (Trademark
Trial & App. Bd. May 11, 1993) ........................................................9

*Pumpkin Ltd. v. The Seed Corps*,
46 USPQ2d 1582 (TTAB 1997).................................14, 15, 18, 21

*Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*,
256 F.3d 781 (8th Cir. Neb. 2001)....................................................23

*US v. Boyle*,
469 U.S. 241 (1985).........................................................................18

**Rules**

Fed. R. Civ. P. 55(c)..........................................................................12

Fed. R. Civ. P. 60(b) ..............................................................1, 10, 18

Fed. R. Civ. P. 60(b)(1)...........................................................12, 23, 24

WHP 556597599v6

## I.  STATEMENT OF RELATED CASES

Opposition No. 91229386, regarding PoloGear's applications for the marks POLOGEAR & Design and POLO GEAR USA & Design (Serial Nos. 86/488,051 and 86/488,059, respectively), has been suspended by the Trademark Trial and Appeal Board (the "Board") pending disposition of this Appeal.  Appx3018-3020.

## II.  STATEMENT OF THE ISSUES

Did the Board abuse its discretion, or rely on facts unsupported by substantial evidence, in denying Appellant Polo Gear's Motions for Relief from Judgment pursuant to Fed. R. Civ. Pro. 60(b)?

## III.  PRELIMINARY STATEMENT

PoloGear's arguments to the Board and its present appeal each focus heavily on allegations of misconduct by John Mariani, an attorney who never appeared on its behalf.[1]  While PoloGear seeks to portray itself as a victim of Mr. Mariani, its verbose submissions remain conspicuously silent on several material facts, casting serious doubt on the veracity of PoloGear's account of events.

Contrary to the misleading suggestions in PoloGear's Appeal Brief, the first withdrawal motion ("Withdrawal Motions" ) filed with the Board by PoloGear's

---

[1] Mr. Mariani was formerly a partner at the law firm of Shutts & Bowen and left to start his own law firm at some time around October 2015.  Another partner at Shutts & Bowen, Daniel Barksy, was PoloGear's prior attorney of record in the relevant proceedings before the Board.

prior counsel on October 14, 2015[2] said nothing whatsoever about Mr. Mariani's impending departure from Shutts & Bowen. **Instead, the sole factual basis for the Withdrawal Motions was that PoloGear had failed to pay its lawyers**.

The Withdrawal Motions cited "irreconcilable difference[s] between Applicant and counsel. . . . Specifically, the Applicant fails substantially to fulfill an obligation to the practitioner regarding the practitioner's services and has been given reasonable warning that the practitioner will withdraw unless the obligation is fulfilled." Appx0226-0228; Appx1645-1647.

This central, material contention in the Withdrawal Motions is uncontroverted and not even mentioned anywhere in PoloGear's Appeal Brief, nor is it addressed anywhere in the record. PoloGear's Appeal Brief, like the Declarations of its principal Gary Fellers dated February 16, 2016 and February 22, 2016, contain much hyperbolic vitriol intended to demonize Mr. Mariani[3], but not a word about PoloGear's failure to pay legal fees incurred by Mr. Mariani's

---

[2] The Withdrawal Motions were filed on October 14, 2015 in connection with the applications at issue in Opp. Nos. 91224180 and 91207805 and on October 23, 2015 in connection with the applications at issue in Opp. No. 91221338.

[3] Heedless of its extravagant rhetorical excesses, PoloGear goes so far as to compare Mr. Mariani to a "suicide bomber." PoloGear's Br. at 29. The "no-hold-barred" approach and intemperate tone employed by PoloGear bring to mind a well-known lawyers' cliché: "When the facts are on your side, pound the facts. When the law is on your side, pound the law. When neither is on your side, pound the table." Bereft of support for its position in either the facts or the law, PoloGear resorts to pounding the table with reckless abandon.

prior firm before there was any dispute with Mr. Mariani.[4]  PoloGear's silence on this point speaks volumes.  PoloGear does not dispute the allegation of non-payment set forth as the basis for the Withdrawal Motion.  This "strategic" omission by PoloGear undercuts the narrative[5] of victimization that PoloGear urged so vociferously upon the Board and now urges upon this Court.

The Board explicitly considered and addressed in its decision all of the relevant facts.  These facts are largely beyond dispute and certainly supported by substantial evidence.  The Board also addressed explicitly the legal arguments advanced by PoloGear.  There has been no abuse of discretion by the Board, which explained clearly why it declined to vacate its prior judgments entered against PoloGear and exercised its prerogative to administer its caseload in an orderly fashion.

---

[4] Mr. Mariani would have had good reason to hesitate to appear as counsel on behalf of a client with a history of failing to pay him. Most prudent attorneys taking on a matter from a client that previously failed to pay would ask for payment of outstanding legal bills as well as a retainer payment before assuming responsibility for a matter at a new firm. PoloGear has created a record that features almost exclusively its own communications directed to Mr. Mariani. Given the Withdrawal Notice filed by Daniel Barsky of Shutts & Bowen citing non-payment by PoloGear as the reason for withdrawal, it strains credulity to suggest that Mr. Mariani would not have discussed payment with PoloGear before representing it at his newly founded, two-lawyer firm. The subject of payment is noticeably absent from the largely one-way communications selected by PoloGear to serve as exhibits to its submissions to the Board and to this Court.
[5] Tellingly, PoloGear cites numerous communications from Mr. Fellers to Mr. Mariani, but scant substantive written communications from Mr. Mariani himself.

## IV.     STATEMENT OF FACTS/STATEMENT OF THE CASE

On October 14, 2015, the Board granted the Withdrawal Motion filed by

PoloGear's counsel and gave PoloGear 30 days in which to retain new counsel, or

to notify the Board if it intended to proceed on a *pro se* basis. PoloGear received

the Board's October 14, 2015 Order directly from the Board.  Appx0229-0232;

Appx09300-Appx0933.

After failing to respond to the October 14 Order, the Board on November 24,

2015 issued an Order to Show Cause, which stated that: "[n]o appearance or other

response has been filed" and gave PoloGear an additional 30 day period in which

to respond.  Appx1655;Appx0233.  PoloGear received the Board's November 24,

2015 Order directly from the Board.  *Id*.  PoloGear again failed to respond.

Having received no response to two Orders requiring a response from PoloGear,

the Board entered judgment against PoloGear on January 6, 2016.   Appx1656.

PoloGear again received notice of this judgment directly from the Board.  *Id.*;

Appx0971-0972. [6]

PoloGear asserts that its failure to respond to the Board's Orders should be

attributed to John Mariani, an attorney that PoloGear accuses of repeatedly lying to

---

[6] The Orders in all the underlying proceedings were issued within days of each
other.  The October 14, 2016, November 24, 2015 and January 6, 2016 Board
Order dates correspond with Opposition No. 91224180.  The corresponding dates
in the consolidated 91207805 / 91221338 Opposition are October 21, 2015,
November 30, 2015 and January 20, 2016, respectively.

4

and misleading it.  See, e.g., PoloGear's Br. at 6, 14, 27.  PoloGear cites only one documented example of a purported lie by Mr. Mariani, which is a promise made in an email message sent on November 16, 2015 to file an appearance "this week." Appx0944; PoloGear's Br. at 11.   PoloGear acknowledges having received the Board's Order to Show Cause issued just eight days later on November 24, 2015, which state expressly that no appearance of counsel had been filed.  PoloGear's Br. at 11.  PoloGear thus had timely actual knowledge that Mr. Mariani had not filed an appearance during the week of November 16, 2015.

In its Appeal Brief and in the Declarations of Gary Fellers, PoloGear does not distinguish factually between: (1) legal advice rendered by Mr. Mariani regarding the possibility of rectifying the consequences of what PoloGear knew to be a series of missed deadlines; and (2) discrete factual representation(s) as to whether or not Mr. Mariani had in fact filed an appearance on its behalf.  It is undisputed PoloGear itself had direct, timely, actual notice of each and every Board communication warning it in explicit terms of the consequences of a failure to timely respond to the Board.

## V.    SUMMARY OF ARGUMENT

In the instant case, the Board expressly considered all of the facts and evidence presented by PoloGear and applied those facts to the law.  The Board's factual findings are most certainly supported by substantial evidence and PoloGear

has not identified a single fact in dispute.  On these facts, there has been no abuse of discretion by the Board in entering judgment against PoloGear and denying PoloGear's motions to vacate, because PoloGear had timely actual knowledge of each response deadline that it failed to meet.

## VI.    ARGUMENT

### A.    <u>Standard Of Review</u>

Rulings of PTO tribunals are reviewed by the Federal Circuit in accordance with the standards of the Administrative Procedure Act.  *See Dickinson v. Zurko*, 527 U.S. 150, 152, 50 U.S.P.Q.2D (BNA) 1930, 1931-32, 144 L. Ed. 2d 143, 119 S. Ct. 1816 (1999).  *See FirstHealth of the Carolinas, Inc., v. CareFirst of Md., Inc.*, 479 F. 3d 825 (Fed. Cir. 2007).

An abuse of discretion may be found when the Board's decision is clearly unreasonable, based on an erroneous conclusion of law or a clearly erroneous finding, or the record is devoid of any evidence upon which the Board could rationally have based its decision.  *See Huston v. Ladner*, 973 F. 2d 1564 (Fed. Cir. 1992).

Plenary review is given to the Board's legal conclusions.  *See In re The Boston Beer Co. Ltd. P'ship*, 198 F.3d 1370, 1373, 53 U.S.P.Q.2D (BNA) 1056, 1058 (Fed. Cir. 1999).  The Board's factual findings are upheld unless they are arbitrary, capricious, or unsupported by substantial evidence. *See On-Line*

6

*Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1085, 56 U.S.P.Q.2D
(BNA) 1471, 1475 (Fed. Cir. 2000).

A decision is supported by substantial evidence when "a reasonable mind
might accept [it] as adequate to support a conclusion." *Matsushita Elec. Indus. Co.
v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

## B.   The Board's Denial Of Pologear's 60(b) Motions Is Supported By Substantial Evidence And Involved No Abuse Of Discretion

### 1. The Board Considered All Relevant Circumstances Under Rule 60(b)(1)

The Supreme Court in *in Pioneer Investment Servs. v. Brunswick Assocs.
Ltd. P'ship* set forth four factors to be used in determining excusable neglect: (1)
the danger of prejudice to the non-moving party, (2) the length of the delay and its
potential impact on judicial proceedings, (3) the reason for the delay, including
whether it was within the reasonable control of the movant, (4) bad faith on the
part of the moving party or its counsel.  507 U.S. 380, 395 (1993).

PoloGear, throughout its brief, argues that that the Board somehow failed to
consider multiple facts and applicable law in concluding that the actions of
PoloGear and its counsel did not amount to excusable neglect.  These arguments
are disconcerting and somewhat surreal, because as further discussed *infra*, is it

7

abundantly clear that the Board **did** consider all of these facts and factors and it did so expressly in its opinion.[7]

## 2. The Board's Judgments Were Not Default Judgments Within the Meaning of FRCP 55

The Board has inherent power to enter sanctions against a party, which flows from its inherent authority to manage the cases on its docket.    *See Chambers v. NASCO*, Inc., 501 U.S. 32 (1991) (stating that this inherent power "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of the cases").

FRCP 55(a) provides that a default judgment may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Consistent with this characterization, the CFR Section governing practice before the Board provide that a "default judgment" can be a consequence of a failure to answer.  37 CFR § 2.114(a) provides that: "if no answer is filed within the time set, the petition may be decided as in case of default."  Similarly, references to "default judgment" throughout the Trademark

---

[7] Specifically, PoloGear asserts that (1) the Board failed to properly consider all circumstances regarding the length of the delay; (2) the Board failed to take into account all relevant circumstances in assessing the length of the delay; (3) the Board failed to consider the harsh and prejudicial result the outcome of its denial would have on PoloGear; (4) the Board failed to take into account the lack of prejudice to PRL and lack of bad faith of PoloGear; (5) the Board abused its discretion in not providing an explanation for assessing the length of the delay.

8

Manual of Board Procedure – the Board's codification of its own administrative practices – consistently appear together with references to parties who have "failed to file a timely answer" or failed to "timely [file an] answer to the complaint." *See generally* TBMP §312.

Further, in stating that its own judgments against PoloGear were not default judgments, the Board cited precedents involving nearly identical fact patterns in which the Board had determined that judgment should be entered due to a party's loss of interest in a case. Appx0002. *See Pro-Cuts v. Schilz-Price Enters.*, 1993 TTAB LEXIS 15, *2, 27 U.S.P.Q.2D (BNA) 1224, 1225 (Trademark Trial & App. Bd. May 11, 1993)[8].

It is thus clear that the Board's judgments were not default judgments and to suggest otherwise is to ignore reality. The parties here had exchanged discovery requests and document productions, scheduled depositions, and exchanged drafts of a settlement agreement. Only after all of these activities did PoloGear begin serially missing deadlines. Even in the single more recently-filed proceeding in

---

[8]The underlying facts in *Pro-Cuts* were stated as follows:

> In an action dated November 19, 1992, the Board granted the request, suspended proceedings herein, and allowed applicant 30 days in which to either appoint new counsel, or file a paper stating that it wished to represent itself. Having received no response from applicant to this action, the Board, in an action mailed February 4, 1993, allowed applicant 20 days in which to show cause why judgment should not be entered against applicant in view of applicant's apparent loss of interest in the case. *Id.*

9

which an answer had not yet been filed (Opp. No. 91224180), PoloGear's counsel
Daniel Barsky had already filed a motion to withdraw and that motion was the
catalyst for the Board's multiple Orders. It is clearly within the discretion of the
Board to determine that in these circumstances the facts surrounding the multiple
missed deadlines warrant entry of judgment against PoloGear.

PoloGear cites to several cases for the proposition that Rule 60(b) should be
construed liberally in the context of default judgment.  However, as already noted,
the Board was clear that its judgments were not default judgments and this
determination is well within the Board's administrative prerogatives.  Further, the
Board was liberal in granting two additional months beyond the initial thirty-day
period, for a total of three months in which PoloGear failed to respond to its
Orders.

### 3.  The Board Considered PoloGear's *Pro Se* Status and Properly Determined that its Inaction Was Reasonably Within its Control

PoloGear asserts that the Board "completely ignored PoloGear's *de facto*
*pro se* status" when it determined that it was within PoloGear's reasonable control
to file a response to the Board's Orders.  PoloGear's Br. at 29.  PoloGear further
asserts that the Board's refusal to grant it relief "effectively ignores" the testimony
of Mr. Fellers that PoloGear did not have any prior experience in Board matters or
filings.  *Id*.

10

These assertions ignore the express language of the Board's actual analysis, in which it considered and acknowledged PoloGear's claim that it was essentially acting *pro se*.  The Board stated, "Applicant further argues that the 'excusable neglect' standard should be construed liberally because Applicant is the defendant in this case and was essentially appearing pro se because its attorney abandoned it".  Appx0004-0005.  The Board considered this argument, but concluded that "after careful review of Applicant's affidavit and attachments, the Board finds that Applicant's failure to respond to multiple Board orders was wholly in the control of Applicant."  Appx0008.  Thus, the Board did not ignore or fail to consider PoloGear's contentions. Instead, it logically rejected them based on the evidence of record.

PoloGear then points to a number of cases in which courts have shown leniency in setting aside *default judgments* where an applicant or a litigant was *pro se*, including *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Malibu Media, LLC v. Doe*, 2013 WL 1080603, at *1-2 (S.D. Ind., March 13, 2013) and *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

As discussed *supra*, the judgment against PoloGear was <u>not</u> in fact a default judgment.  As explicitly stated by the Board, the Board entered judgment against

11

PoloGear for "loss of interest in the proceeding." Appx0002.[9]  As such, the

flexibility and leniency often shown in setting aside default judgments does not

apply to the instant case.

Moreover, the cases cited to by PoloGear are not binding upon this Court

and are, in any event, readily distinguishable.  Both *Enron* and *Malibu Media* are

analyzed though the lens of the "good cause" factors required to set aside a default

judgment under Fed. R. Civ. P 55(c)[10].

In *Enron Oil Corp* the court found abuse of discretion in district court's

refusal to set aside default under 55(c) when the district court (1) completely failed

to consider the good cause factors noted above, (2) did not even acknowledge that

the defendant was pro se, (3) the defendant's papers were filed just **one day** late,

(4) the default judgment created $275 million in damages for the defendant, and

(5) the record on appeal did not make apparent the reasons why the district judge

denied the motion to set aside default.

The stark differences between the facts and the law in *Enron* and the facts

and the law here are readily apparent.  Here, the Board's analysis was under the

"excusable neglect" standard of FRCP 60(b)(1), the delay was much longer than

---

[9] In a true default judgment, a party fails to respond to the initiation of a legal action, such as by failing to file an answer.  Here, PoloGear participated actively in the case before its multiple failures to respond to orders issued by the Board.
[10] These are: "(1) whether the default was willful (2) whether setting aside the judgment would prejudice the adversary and (3) whether a meritorious defense is presented."

one day, and both the record and the Board's opinion make abundantly clear that the Board considered all the relevant facts and explained the reasons for its decision.

In *Malibu Media*, the *pro se* individual defendant did not know that he had to file an Answer.  Here, PoloGear was well aware that responses to the Board's Orders were required and that further that no response had been made.

In *Higgs*, the appellant, a permanent resident of the United States incorrectly identified the appeal he was filing before the Board of Immigration Appeals as one from an interlocutory ruling, rather than from a final order of removal and because of that mistake, missed a filing deadline.   In that instance, the Third Circuit found, courts should "liberally construe *pro se* submissions or immigration petitions." 655 F.3d 333 at 340. (emphasis added).  PoloGear's missed deadline was not as a result of a mistake as to exactly what order it was supposed to be responding to.

It is clear that the types of the errors committed by the *pro se* litigants noted above are starkly different from the failure PoloGear is attempting to attribute to its *pro se* status.

Moreover, the Board did act with leniency toward PoloGear.  On October 14, 2015[11] the Board notified PoloGear that it was suspending the proceedings for 30 days so that PoloGear could retain new counsel.  Appx1648-1651.  This order

---

[11] In Opposition No. 91207805, the Board notified PoloGear of this suspension on October 21, 2015.

contained specific instructions as to how PoloGear could proceed. *Id*. When

PoloGear missed that deadline, the Board gave them another 30 days to show

cause whether judgment should not be entered against them. Appx1655.  In fact,

the Board did not enter judgment against PoloGear until January of 2016.

Appx1656.  As such, the Board gave PoloGear ample time to respond to the Board

and instructions on how to do so.  PoloGear nevertheless failed to respond to the

Board's Orders.  The Board expressly considered PoloGear's "*de facto pro se*

status" and there is no basis for PoloGear's assertion to the contrary.

### 4.  The Board's Finding on the Second *Pioneer* Factor is Supported by Substantial Evidence and Involved No Abuse of Discretion

The second *Pioneer* factor is the "length of the delay and its potential impact

on judicial proceedings."  507 U.S. 380, 395.    This is not a matter of calculating

solely how late a particular required action was taken; the Supreme Court made

clear that a proper analysis of this factor must take into consideration the **overall**

**impact of the delay on the proceeding.**

That is precisely how the Board approached the issue, as expressly stated in

the Board's Order, "the Board must take into consideration, not only the length of

time between the expiration of the time for responding the Board's order, but also

the *additional delay resulting from the time required for briefing and deciding the*

*motions to vacate*. Appx0006.  This includes the Board's time and resources that

14

must be expended on matters in which it had been in the moving party's control to prevent the unfavorable judgment. *See Pumpkin* 43 U.S.P.Q.2d at *7 (The Board's interest in deterring such sloppy practice weighs heavily against a finding of excusable neglect, under the second *Pioneer* factor."); *See Mattel, Inc. v. Henson*, 88 Fed. Appx. 401, 403 (Fed. Cir. 2004) (Determining that Appellant mischaracterized the delay as two-month period when it failed to consider the much longer delay necessary to conduct discovery and take testimony after reopening the proceeding and thus finding such a delay "would be significant, and would run counter to the TTAB's interest in expeditious adjudication of the cases on its docket").

Further, the impact of these types of delays on Board proceedings generally, is "not inconsiderable" especially as the Board has a large and ever-growing docket of cases that "already are quite lengthy because they must be conducted on the written record rather than by live testimony." *See Pumpkin*, 43 U.S.P.Q.2d at *7 (Finding a three and a half month delay to have a significant negative impact on the proceedings).

Here, a response to the Board's order was due from PoloGear in the consolidated proceedings on November 20, 2015. The Board's opinion was issued in June of 2016. In that context, the Board noted that "the impact of a six month delay in a proceeding is not insignificant." Appx0006. The Board also determined

15

that there was an impact on the proceeding because "it is in the Board's interest to minimize the amount of time spent on motions which are the result of the failure of a party to follow Board orders or to meet deadlines." Appx0006-0007.

The impact of the delay, including the time for PoloGear's appeal, has since become even more significant. When PRL was responding to PoloGear's motion nearly a year ago, PRL did not assert specific prejudice to PRL. Were that motion being briefed today, PRL could readily demonstrate prejudice of the most inevitable kind. A key witness and Director of PoloGear, Merle Jenkins, died unexpectedly in the Summer of 2016, shortly after the Board issued the Order that is the subject of this Appeal. Mr. Jenkins is mentioned by PoloGear in its Appeal Brief (at 13) and had been identified in PoloGear's Initial Disclosures as a person with relevant knowledge. Thus, PRL is now severely prejudiced by the impact of the overall delay in these proceedings, as PRL has lost the ability to depose a person with relevant information. This recent development not only supports the Board's conclusion that the third *Pioneer* factor, the impact of the delay on the proceeding, weighs against PoloGear, but now shows that the first *Pioneer* factor, namely, the danger of prejudice to the non-moving party, also weighs in PRL's favor.

There is therefore no basis for PoloGear's contention that the Board "provided no explanation for how it calculated the six month delay noted in its

16

opinion" and that this failure in and of itself is an abuse of discretion. PoloGear's

Br. at 20. The six-month period running from November 20, 2015 – the date

when a response to the Board's order was due from PoloGear – to late June 2016,

when the Board ruled upon PoloGear's motion for relief from judgment, took into

account the time for briefing and ruling upon PoloGear's motion. The Board

clearly did not abuse its discretion in determining that the overall impact of the

delay on the proceeding was significant.[12]

PoloGear devotes much misplaced emphasis to prior, stipulated extensions

of time approved by the Board because the parties were involved in settlement

discussions. PoloGear's Br. at 21-22. The suggestion that such stipulated

extensions should somehow factor into the analysis here is preposterous.[13]

---

[12] Moreover, even adopting the "calculation" urged by PoloGear, would still result in a delay of more than three months -- running from the November 20, 2015 date of the first missed deadline to the date of the filing of the motion to vacate on February 22, 2015. PoloGear's Br. at 32-33. A three month delay is still significantly longer than delays found to be reasonable by other courts and is more in line with timeframes found to be unreasonable. Courts have found delays of nine days (*Fred Hayman Beverly Hills Inc. v. Jaques Bernier, Inc.*, 21 U.S.P.Q.2d 1556 (1991)), fifteen days (*Djeredjian v Kashi Co.*, 21 U.S.P.Q.2d 1613 (1991)), and twenty days (*Pioneer*) to be reasonable. In *Pumpkin*, A three and one-half month delay has been found to be unreasonable as that delay would have a negative impact on proceedings. 43 U.S.P.Q.2d at *7.

[13] Although PoloGear's current counsel may not be fully informed of the history of the dispute, the parties were previously engaged in settlement discussions and counsel exchanged multiple drafts of a settlement agreement. Further, the length of the delay in an excusable neglect analysis necessarily focuses on the delay caused by a party's failure to take the actions required of it. Settlement discussions that occurred prior to such party's failure are irrelevant. PoloGear's assertion of a

17

Accordingly, the Board's determination that the second *Pioneer* factor weighed in favor of PRL is demonstrably supported by substantial evidence.

**5. The Board's Findings on the Third *Pioneer* Factor are Supported by Substantial Evidence and Involved No Abuse of Discretion**

The third *Pioneer* factor is the reason for the delay, including whether it was within the reasonable control of the moving party. *See Pioneer*, 507 U.S. at 395. Inaction or neglect by counsel as a reason for delay has been repeatedly held to be within the reasonable control of the moving party. *See Id.* at 396; *See Link v. Wabash R, Co.*, 370 U.S. 626 (1962), US v. Boyle, 469 U.S. 241 (1985)). Moreover, it is well settled that the client and the attorney share a duty to remain diligent in prosecuting or defending the client's case and that action, inaction, or neglect by the client's chosen attorney will not excuse the inattention of the client. *CTRL Systems v. Ultraphonics North America Inc.*, 52 U.S.P.Q.2d 1300 (T.T.A.B. 1999) (a party is to be held accountable for the acts or omissions of its counsel); *Marriott Corp. v. Pappy's Enterprises, Inc.*, 192 USPQ 735 (T.T.A.B. 1976) (denying relief from judgment under Rule 60(b) where errors by attorney's office held not excusable neglect).

As such, a delay is in the reasonable control of Applicant if either Applicant itself or its counsel are responsible for the failure to act. *See Pumpkin*, 43

---

"double standard" in not factoring in stipulated extensions for settlement discussions (PoloGear's Br. at 33) is facially ludicrous.

U.S.P.Q.2d 1582 (refusing to grant relief from default judgment for delay attributed to attorney docketing error); *see also CTRL Systems*, 52 U.S.P.Q.2d 1300, 1302-3 (T.T.A.B. 1999) (denying relief from judgment where, as here, the Board had issued order to show cause to which the movant did not respond and there was no evidence that movant's counsel "actively concealed information").

It is uncontroverted that after Shutts & Bowen withdrew from representation of PoloGear, all Board communications were sent to PoloGear directly and that PoloGear did in fact receive them. Thus, PoloGear was fully aware of the status of the proceedings, the Board's requirements, and the failures of its chosen counsel to enter an appearance or respond to the orders.  Appx0009; Appx0940-0946; Appx0970-0973.  PoloGear received the Board's order requiring its response and knew that Mr. Mariani had not entered an appearance on its behalf.  Appx0970-0973. Thus, the Board determined that PoloGear's failure to respond was "wholly within the reasonable control of [PoloGear]".  Appx0008.

The Board further noted that because Mr. Mariani never made an appearance that it was the responsibility of PoloGear and within PoloGear's reasonable control to file a response.  Appx0009.  The Board thus determined that *PoloGear's* failure to respond could not be considered excusable neglect.  *Id.*

PoloGear's solitary, flimsy argument regarding the facts underlying the third *Pioneer* factor is that the Board sometimes referred to Mr. Mariani as "Applicant's

19

attorney," when in fact PoloGear was "worse than on its own.  It was unknowingly

on its own."  PoloGear's Br. at 34.

However, the evidence in the record reveals that indeed PoloGear knew

throughout the proceedings that it was "on its own," as it received all of the

Board's notices directly and repeatedly asked Mr. Mariani if he was going to

appear.  Appx0940-0946. Thus, PoloGear's statement that it was "unknowingly on

its own" is demonstrably false.

Further, the Board examined not only the actions of Mr. Mariani, but also

the actions of PoloGear itself, as a party who was unrepresented by counsel.  The

Board determined that, based on PoloGear's own direct knowledge of missed

deadlines, PoloGear was itself negligent in not taking appropriate action.

Appx0019.  The Board specifically stated: "Applicant's failure to respond to the

Board's orders was a direct result of **Applicant and** Mr. Mariani's negligence".

Id. (emphasis added).

As already noted, the facts here are not akin to those in *Malibu Media*,

where the *pro se* individual defendant did not know that he had to file an answer.

Here, PoloGear was well aware that responses to the Board's orders were required

and that further that no response had been made.

The Board, considering all the facts presented by PoloGear, determined that

because PoloGear was at all times aware of the status of the proceeding and aware

that Mr. Mariani had not appeared in the proceeding, it was PoloGear's

responsibility and within its reasonable control to have responded.

### 6. The Board Appropriately Gave Greater Weight in this Case to the Third Pioneer Factor, the Reason for the Delay

PoloGear asserts that the Board erred when it "essentially made factors 2

and 3 [of the *Pioneer* factors] dispositive of its inquiry into excusable neglect."

PoloGear's Br. at 36.  PoloGear claims that by doing so, the Board "improperly

marginalized the other specifically enumerated *Pioneer* factors, which the [Board]

specifically conceded were in favor finding "excusable neglect," in direct disregard

of the Supreme Court's enumeration of the four factors that must be considered . . .

." *Id*.

This is another gross misstatement of law and fact.  Precedential Board case

law supports the Board's finding that the third *Pioneer* factor is one of the most

important factors in the excusable neglect analysis.  Specifically, the Board cited to

*Luster Products Inc. v. Van Zandt*, 104 USPQ2d 1877, 1879 (TTAB 2012); *Old*

*Nutfield Brewing Co. v. Hudson Valley Brewing Co.*, 65 USPQ2d 1701, 1702

(TTAB 2002); *Pumpkin Ltd. v. The Seed Corps*, 46 USPQ2d 1582, 1586 n.7

(TTAB 1997) for the proposition that the second and third *Pioneer* factors are the

dominant factors.  Appx0019.

21

This Court has previously affirmed a Board decision in which the Board denied a motion to reopen a testimony period **based on the second and third *Pioneer* factors**. *See FirstHealth of the Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 829 (Fed. Cir. 2007). In *FirstHealth*, the Board had held that "because the reason for delay . . . was 'wholly within the reasonable control of [the movant], the third *Pioneer* factor weighs heavily against a finding of excusable neglect' and that the Board's interest in deterring delay due to "sloppy practice or inattention to deadlines" was relevant to the second *Pioneer* factor (i.e. the length of the delay) and also weighed heavily against a finding of excusable neglect. *Id*. This analysis is virtually identical to the one used by the Board in this case. Appx0007; Appx0019. In *FirstHealth*, the Board had found that there was no danger of prejudice to the non-moving party and no evidence of bad faith, but nonetheless found no excusable neglect. 479 F.3d at 830. There, the Federal Circuit noted that the Board nevertheless denied the motion based on the second and third Pioneer factors. *Id*. The Court stated: "As in *Pumpkin*, substantial evidence supports a finding that the second and third factors weigh against excusable neglect", and further found that "accordingly, the Board's finding in this case **is consistent with its prior practice, and it did not abuse its discretion** in denying [appellant's] motion to reopen the testimony period." *Id.*

22

The Eighth Circuit case relied on by PoloGear for the proposition that reliance only on the "reason for the delay" could be considered error is readily distinguishable.  In *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, the Court determined that focusing *exclusively* on the proffered reason for the mistake was in error.  256 F.3d 781, 783 (8th Cir. Neb. 2001) (emphasis added).

Here, the Board discussed all of the factors and found *two* factors to be of greater significance, as noted *supra*.  Further, *Union Pacific* was a true default judgment case  in which "faulty record keeping" resulted in a ten day delay.  *See Id*.  Here, the reason for the delay was not a minor mistake as a result of a clerical issue and, as noted, the delay was significantly more than ten days.

### 7.  FRCP 60(b)(6) Can Yield No Different Result than FRCP 60(b)(1) on the Same Facts

PoloGear asserts that the Board abused its discretion in not undertaking a separate analysis under the catch-all provision of Rule 60(b)(6), which states that relief from judgment may be granted for "any **other** reason that justifies relief." PoloGear's Br. at 39 (emphasis added).  However, **there is no "other" reason not already explicitly considered and addressed by the Board**.  All of the facts that PoloGear believes amount to "extraordinary circumstances" were already expressly considered by the Board and found not to warrant relief under 60(b).

PoloGear itself noted that the standard under 60(b)(6) is a much higher standard than that of 60(b)(1).  PoloGear's Br. at 38.  Relief under 60(b)(6) requires "extraordinary circumstances".  *See Pioneer,* 507 U.S. at 393. PoloGear cites to a non-precedential Eleventh Circuit case, *Oquendo v. U.S.*, 541 Fed. Appx. 954, 956 (11th Cir. 2013) to support its contention that the Board committed an abuse of discretion.  PoloGear's Br. at 39.  However, *Oquendo* on its face is inapplicable, even according to PoloGear's own summary of the holding of that case.  In *Oquendo*, the Eleventh Circuit found that the district court abused its discretion when it failed to provide any explanation for its denial of movant's **Rule 60(b)(1)** motion.  541 Fed. Appx. 954.[14]

PoloGear also cites to several cases in which courts found relief to be appropriate under 60(b)(6). However, the facts here are readily distinguishable from the facts in those cases.  First, PoloGear cites to *Primbs v. United States*, 4 Cl. Ct. 366 (Cl. Crt. 1984), asserting wishfully that the facts of *Primbs* "fit like a glove in this case"  PoloGear's Br. at 40.  In reality, the facts in *Primbs* are wholly distinguishable.  In *Primbs*, the court vacated a judgment based on information that prior counsel had: (1) failed to inform defendant of the court's order to show cause

---

[14] The district court in *Oquendo* offered no explanation for its denial of the 60(b) motions, stating only: "This case is before the Court on Petitioner's Motion for Reconsideration. Upon consideration, the motion is DENIED." *Id.* at 955-56. Here, the Board's reasons for its refusal to grant PoloGear relief from judgment were clearly enumerated in the Board's opinion.

24

and to dismiss defendant's case and (2) actively deceived defendant about the status of the case. *Primbs*, 4 Cl. Ct. at 367. Defendant in the *Primbs* case **did not even know** about the judgment entered in the case until a month after this case had been dismissed with prejudice. *Id.*

Here, it is uncontroverted that PoloGear had timely actual knowledge of all deadlines and orders in this proceeding, unlike the situation in *Primbs* in which the moving party was completely in the dark about the inaction of its attorney and the status of his case. As noted above, even if PoloGear relied on the single documented instance in which Mr. Mariani promised to file an appearance, that reliance would have been mooted by a subsequent Board order stating that no appearance had been filed.

The same distinction can be found in *Community Dental Services v. Tani,* a Ninth Circuit case also cited by PoloGear. There, the court noted that "an **unknowing** client should not be held liable on the basis of a default judgment resulting from an attorney's grossly negligent conduct . . . ." 282 F.3d 1164, 1169 (9th Cir. 2002)(emphasis added). The court in *Community Dental* also focused heavily on the movant's lack of knowledge, noting several times that the movant first became aware of its attorney's failures when it received an order entering a judgment against it – **after the attorney represented that the case was progressing "smoothly" and "going well**." *Id.* at 1167. Here, before any

judgment issued, PoloGear was directly notified repeatedly by Board Orders of the need to respond.  Notably, PoloGear never once alleges anywhere: (1) that Mr. Mariani ever said that he had actually filed the requisite appearances; or (2) that Mr. Mariani ever misrepresented any facts regarding developments with its case.

The same theme of lack of knowledge by the client being inextricably tied to a finding of extraordinary circumstances under 60(b)(6) appears in *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 122 (D.C. Cir. 1977), also cited to by PoloGear.  There, the court specifically stated that "appellant may not have known the extent" of its attorney's deceptive conduct.  *Id.*

PoloGear also points to *Herring v. Merit Sys. Prot. Bd.* to further support its proposition that "serious ... dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief [from a dismissal] under Rule 60(b)(6)." 78 F.3d 1011, 1018 (Fed. Cir. 2015).  However, there are two glaring facts in Herring which distinguish that case from the instant one.  There, the court specifically noted that appellant has ***submitted the required payment for legal services*** and found that she did not have a duty beyond calling her counsel in the few days prior to the deadline ***in the absence of any indication whatsoever that additional steps were necessary***.  *Id*. at 1014. (emphasis added).

Here, PoloGear has all but admitted that it did not pay its prior counsel and it is clear from the record, including from Mr. Fellers' frantic emails to Mr.

26

Mariani, that there was <u>every</u> indication that things were not proceeding smoothly – all undisputed facts indicating clearly PoloGear's knowledge that it needed to take further action.

Accordingly, it is clear that the Board considered all facts relevant to a determination of a finding for relief under 60(b)(6) and determined PoloGear was thereto not entitled and further that relevant case law does not support PoloGear's assertion that it is entitled to such relief.

## VII.  CONCLUSION

For the foregoing reasons, PRL respectfully submits that the Board committed no abuse of discretion and that its factual findings were supported by substantial evidence.  Consequently, the Board's decisions should be affirmed.

DATED:  January 17, 2017                    Respectfully submitted,

                                            GREENBERG TRAURIG, LLP

                                            By: /s/ Daniel I. Schloss
                                            Daniel I. Schloss
                                            GREENBERG TRAURIG, LLP
                                            200 Park Avenue
                                            New York, New York 10166
                                            Tel: (212) 801-2256
                                            *Attorneys for Appellee*

WHP 556597599v6

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   January 17, 2017
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Daniel I. Schloss | /s/ Daniel I. Schloss |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Greenberg Traurig, LLP |
| Address | 200 Park Avenue, 38th Floor |
| City, State, Zip | New York, NY 10166 |
| Telephone Number | (212) 801-2256 |
| Fax Number | (212) 805-5571 |
| E-Mail Address | schlossd@gtlaw.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

<u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(a) because:

    This brief contains 6588 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman font.

Dated:  January 17, 2017          By:    /s/ Daniel I. Schloss
                                         Daniel I. Schloss
                                         GREENBERG TRAURIG, LLP
                                         200 Park Avenue, 38th Floor
                                         New York, New York 10166
                                         Tel: (212) 801-2256
                                         *Attorneys for Appellee*